## In re PENN-CLARION COAL CO.

(District Court, W. D. Pennsylvania. October, 1924.)

No. 10148.

**1. Bankruptcy ⊗⇒340—Verified claim is prima facie evidence of facts alleged.**

A sworn proof of claim against a bankrupt is prima facie evidence of the facts therein stated, and one objecting to the claim has the burden of overturning it.

**2. Bankruptcy ⊗⇒340—Invalidity of negotiable bonds of bankrupt corporation must be established by proof.**

Negotiable bonds of a bankrupt corporation, though subject to defenses in the hands of present holders, who prove the same, are not to be disallowed, in the absence of evidence establishing their invalidity, and the fact that they were delivered to, and used by, another corporation having the same officers is not alone sufficient to show that bankrupt did not receive full value for them.

**3. Bankruptcy ⊗⇒340 — Failure to produce books held not to raise any presumption of fact against a third party.**

Failure of the trustee of a bankrupt corporation to produce its books on demand of a creditor objecting to claims held not to raise any presumption of fact against the claimants.

**4. Bankruptcy ⊗⇒340—Evidence held properly considered by referee on contested claims.**

A statement of an account, purporting to have been taken from the books of bankrupt corporation, offered generally by a creditor objecting to claims, and not objected to, held properly considered by the referee.

In Bankruptcy. In the matter of the Penn-Clarion Coal Company, bankrupt. On review of order of referee allowing claims on bonds of bankrupt corporation. Order confirmed.

Brandon & Brandon, of Butler, Pa., for bondholders and others.

Geo. F. Whitmer, Esq., of Clarion, Pa., for R. W. Steele.

John W. Van Allen, of Buffalo, N. Y., for Bondholders Committee and Citizens' Trust Co. of Buffalo.

GIBSON, District Judge. The allowance by the referee of the claims of certain holders of bonds of the bankrupt company has been certified to the court for review. The facts appearing in the record are substantially as follows:

The Penn-Clarion Coal Company, prior to the petition in bankruptcy, was a Pennsylvania corporation engaged in mining coal. The Frontier Coal Company was a New York corporation which held 53 per cent. of the stock of the Penn-Clarion Coal Company, and was sales agent and operated the mines of the last-named company. R. W. Steele, a creditor of the Penn-Clarion Coal Company, who has caused the instant record to be certified, owned the remaining 47 per cent. of the stock. The stock of the Frontier Coal Company, with the exception of one or two shares, was held by M. G. Voelker and Charles A. Royce, president and vice president and treasurer, respectively, of both the Penn-Clarion Coal Company and the Frontier Coal Company, and the business of the two companies was practically all conducted by these two men. R. W. Steele was secretary of the Penn-Clarion Coal Company for a time, and was later succeeded by M. C. Farrell. On June 24, 1919, the directors of the Penn-Clarion Coal Company authorized a mortgage for $20,000 upon the property of the company for the purpose of raising needed funds. The mortgage was executed, and on October 1, 1919, the bonds secured by it were issued, and on December 9, 1919, were turned over to the officers of the company by the Colonial Trust Company of Pittsburgh, the trustee under the mortgage. (The Penn-Clarion Coal Company was adjudicated a bankrupt on December 5, 1921.) Shortly after the delivery of the bonds by the trustee, the whole issue was used by the Frontier Coal Company as collateral security upon various notes made by it. These notes were held by several banks and other creditors of the Frontier Coal Company. The bonds under discussion were not turned over to the holders, with the possible exception of a small amount, when the original indebtedness was incurred, but were delivered upon renewals of the original notes. The holders of these bonds of the bankrupt company filed with the referee claims for the amounts set forth in the bonds, and the allowance of the claims, over

objection of a creditor, has led to the present certification of the record to this court.

[1] The contention of the exceptant in regard to the action of the referee is that the record fails to disclose any competent evidence tending to establish the bonds as evidences of legitimate indebtedness on the part of the bankrupt company. The banks and other holders did not receive the bonds in question as collateral upon the original notes, but upon renewal notes, and therefore are not, he urges, holders in the usual course of business as defined in the rule of law in the premises as it exists in the states of New York and Pennsylvania. Not being holders in the usual course of business, the bondholders, it is claimed, owned the bonds subject to any defense which might have been made against them in the hands of the Frontier Coal Company, and the right of the Frontier Coal Company to their possession has not been established, exceptant contends, by any competent evidence, and therefore the referee was in error in approving the claim of the bondholders.

The contention of the exceptant is, we think, largely based upon a misconception of the law applicable to the finding of the referee. The foundation of the present exception is apparently based upon the idea that a claimant, in the face of objection, must establish this claim by full and satisfactory competent evidence. We are not in accord with this position. A sworn proof of claim against the bankrupt is prima facie evidence of its allegations in case it is objected to. Whitney v. Dresser, 200 U. S. 532, 26 S. Ct. 316, 50 L. Ed. 584, 15 Am. Bankr. Rep. 326. The person objecting to the claim has the burden of overturning it. In the instant case it does not appear, either from the record or any exception, that the claims under consideration were not supported by proper affidavit, and filed in accordance with all the requirements of section 57 of the Bankruptcy Act (Comp. St. § 9641).

[2] Admitting the correctness of exceptant's claim that claimants were not holders in the usual course of business, it was nevertheless the burden of the objecting creditor to produce evidence to establish the invalidity of the bonds in the hands of the original holder. The bonds, as appears from an examination, passed upon delivery. It was not for the referee to declare them invalid, unless so satisfied by evidence produced, and the evidence offered by exceptant is insufficient to establish his claim that the Frontier Coal Company originally held the bonds by fraud. That evidence does bring before the mind a picture of ground capable of bringing forth fraud, but it fails to show a growing crop of fraud. The entire operation of two companies by the same officers, under circumstances indicating possibility of conflict of interests, undoubtedly furnished opportunity for fraud; but opportunity or possibility, or even probability, of fraud is not fraud.

[3] Apart from the failure of exceptant's own testimony to establish the claim that the bonds were wrongfully appropriated and used by the Frontier Coal Company, we find ourselves unable to agree with his contention that no competent evidence appears in the record to sustain the referee's approval of the claim. Exceptant's counsel demanded the books of original entry of both the Penn-Clarion Coal Company and the Frontier Coal Company, which, for some unknown reason, were not produced by the trustee of the first-named company or the receiver of that last mentioned. These books might have been of use to counsel in the trial of his issue, and undoubtedly the production of them should have been enforced, but the failure of the trustee and the receiver, respectively, is not to raise any presumption of fact against a third person. From the standpoint of positive and competent evidence, Charles A. Royce and M. A. Voelker each testified that the Frontier Coal Company had advanced to the Penn-Clarion Coal Company, prior to the use of the bonds by the former, about $120,000, and that the mortgage was authorized and executed to take care of this indebtedness, and that it was fully understood by the directors of the Penn-Clarion Coal Company, at the time the mortgage was approved, that the bonds were to be delivered to the Frontier Coal Company.

[4] As tending to establish the exact amount of the indebtedness, a paper purporting to be a transcript of the ledger account of the Penn-Clarion Coal Company with the Frontier Coal Company was offered in evidence by counsel for the exceptant, without any objection being made, and without limitation in the offer. Ignoring any claim as to the binding effect of his offer upon exceptant, we are firmly of the opinion that the referee, despite the fact that the paper might have been excluded from evidence in the face of proper objection, had the right to weigh it in the consideration of the testimony relative to the transfer of the bonds. If it were considered incompetent or

irrelevant as proof, counsel ought not to have offered it generally and without qualification. However, the transcript of account was not the only evidence of the indebtedness of the bankrupt to the Frontier Coal Company at the time the bonds were pledged, and no testimony was offered which tangibly tended to show an unlawful conversion of the bonds by that company.

The record before us requires the dismissal of the exceptions and the confirmation of the order of the referee.